WILLIAM R. BLAYLOCK, ET AL.

V.

CITY OF RICHMOND

Record No. 910921

April 17, 1992

Present: Carrico, C.J., Compton, Stephenson, Whiting, Lacy, Keenan, JJ.,
and Cochran, Retired Justice

*Jack M. Fulton* for appellants.

*Michael L. Sarahan, Assistant City Attorney (Michael K. Jackson, Assistant City Attorney*, on brief), for appellee.

JUSTICE STEPHENSON delivered the opinion of the Court.

In this appeal, twenty-three former police officers of the City of Richmond who retired under disability (the retirees) contend that the City is improperly reducing their City retirement allowances by amounts each is receiving in workers' compensation benefits and social security disability payments.

The retirees initiated this proceeding by seeking a declaratory judgment of their rights under certain provisions of the Code of the City of Richmond. The trial court struck the retirees's evidence and entered judgment in favor of the City. In doing so, the trial court ruled that it was appropriate for the City to deduct the retirees's workers' compensation payments from their disability retirement allowances and that the retirees failed to present any evidence that social security disability payments ever were deducted from their allowances. The retirees appeal.

The material facts are undisputed. On June 30, 1966, the City Code provided that a member of the City's retirement system who qualified for disability retirement was entitled to receive "an annual retirement allowance payable monthly . . . which shall consist of two-thirds of his average final compensation." Richmond, Va., City Code § 31-50 (1963). The City Code further provided that "[t]he compensation finally awarded to such member under the Virginia [Workers'] Compensation Act shall be deducted from such allowance." *Id.* (Footnote omitted.) The parties agree that,

as of June 30, 1966, police officers who were members of the retirement system were not covered by workers' compensation. Therefore, at that time, no deduction was made from the retirement allowance payable to a qualifying police officer.

Each of the retirees was employed as a City police officer and was a member of the City's Supplemental Retirement System on or before June 30, 1966. Each of them retired under disability subsequent to that date and was granted a disability retirement allowance pursuant to either § 23-38 of the 1975 City Code or § 21-106 of the 1985 City Code.

The 1975 City Code contained a "grandfather clause" which read as follows:

Any of the foregoing provisions of this section to the contrary notwithstanding, the disability retirement allowance payable to any retired employee who was a member of the system on June 30, 1966, and who qualified or could have qualified for disability retirement under the provisions of subsection (b) of section 23-37 of this Code, shall in no event be less than the service-connected disability retirement allowance that would have been payable had the provisions of the system as in effect at June 30, 1966, been in effect at the member's actual date of disability retirement.

City Code § 23-38(f) (1975). The 1985 City Code contains the same provision with minor variations that do not affect the substantive meaning of the clause. City Code § 21-106(f) (1985).

The executive director of the retirement system testified that persons who were members of the system on June 30, 1966, are given special consideration when they retire under disability because the "grandfather clause" guarantees a retiree at least two-thirds of his final average salary as his disability retirement allowance. Nevertheless, two retirees, Donald G. Ehrhardt and Victor A. Weaver, Jr., demonstrated by their testimony that their disability retirement allowances were reduced by workers' compensation and/or social security disability payments.

Ehrhardt retired under disability on November 15, 1980. At that time, his retirement allowance, based on two-thirds of his final average salary, was $979.31 per month. Later, upon receiving a social security disability award, his retirement allowance was

reduced by the amount of the social security award to $574.57 per month.

Weaver retired under disability on April 2, 1983, and was advised that his retirement allowance would be $1,266.11 per month. Weaver, however, also received a workers' compensation award. Thereupon, the City reduced his retirement allowance to $109.78 per month. Later, when Weaver received a social security disability award, he ceased receiving any disability retirement payments from the City.

. The retirees contend that a police officer retiring under disability who was a member of the system on or before June 30, 1966, is guaranteed at least two-thirds of his final average salary without any deductions for workers' compensation or social security disability payments. They assert that the "grandfather clause" leaves in place the law as it was applied to police officers as of June 30, 1966.

The City contends that the 1966 law (former City Code § 31-50) requires that workers' compensation payments be deducted from the retirees's disability retirement allowances. The City asserts that "[d]espite the fact that police officers were not covered by workers' compensation in 1966, the [1966 law] provides no exceptions." The City further asserts that the "grandfather clause" "requires no specific minimum benefit, rather it simply provides a formula to be considered and used when it produces more compensation than the formula in effect at the time of retirement." We do not agree with the City.

■ Clearly, the "grandfather clause" states that the disability retirement allowance payable to any retired employee who could have qualified for disability retirement on June 30, 1966, shall not be less than the allowance "that would have been payable had the provisions of the system as in effect at June 30, 1966, been in effect at the member's actual date of disability retirement." As of June 30, 1966, a disabled police officer was entitled to two-thirds of his final average salary and, because he was not covered by workers' compensation at that time, his disability retirement allowance was not subject to any deductions. The "grandfather clause" guarantees a police officer who retires on disability after June 30, 1966, the same allowance that he would have received "had the provisions of the system *as in effect at June 30, 1966,* been in effect at the member's *actual date* of disability retirement." (Emphasis added.)

■ We hold, therefore, that the retirees are entitled to receive two-thirds of their average final compensation without any deductions for workers' compensation or social security disability payments. To hold otherwise would read the "grandfather clause" out of the City's present retirement law and make the clause meaningless.

Accordingly, we will reverse the trial court's judgment and remand the case with directions that the retirees's disability allowances be computed free of any such deductions.

*Reversed and remanded.*

JUSTICE LACY, with whom JUSTICE KEENAN joins, concurring in part and dissenting in part.

In my opinion the majority improperly interprets the plain words of the City's retirement system when holding that the retirees in this case are guaranteed a retirement benefit of at least two-thirds of their final average salary without any deductions for workers' compensation payments. The grandfather clause at issue provides that the allowance payable to a City retiree who qualified or could have qualified for disability retirement could not be less than the allowance that

> would have been payable had the *provisions of the system* as in effect at June 30, 1966, been in effect at the member's actual date of disability retirement. (Emphasis added.)

This is not a guarantee of a specific amount of the retirement benefit; rather it requires application of the retirement system provisions, as they were in 1966, in determining the appropriate amount.

In 1966 the *provisions of the system* provided that the disability retirement benefits would be reduced by the amount of workers' compensation received by the retiree, thereby precluding a double recovery. This *provision of the system* was not qualified, but applied to all City retirees. In 1966, however, the retirement allowances of City police officers were, in fact, not reduced by workers' compensation payments; at that time, City police officers were not covered by the Workers' Compensation Act. Hence, the lack of a reduction in City police officers' retirement allowances

was not by virtue of any *provisions of the system*, but by virtue of the provision of the Workers' Compensation Act. Subsequently, the Workers' Compensation Act was changed to include City police officers; however, the provisions of the City retirement system did not change nor did the language of the grandfather clause change.

Therefore, I cannot agree that the formula now applied by the City to determine the disability retirement allowance of these City retirees is a formula different than that applied under the *provisions of the system* in 1966. Matters extraneous to the *provisions of the system* have changed, but that does not translate into a change in the *provisions of the system*. The system then, and as applied by the City now, provides that a retiree's benefit will be reduced by the amount, if any, of workers' compensation received by that retiree, thus continuing to eliminate a double recovery. Consequently, I would affirm the trial court's determination in this regard.