Present: Hassell, C.J., Lacy, Keenan, Koontz, Kinser, and
Lemons, JJ., and Carrico, S.J.

USAA CASUALTY INSURANCE COMPANY

                                                OPINION BY
v.   Record No. 021659          JUSTICE LAWRENCE L. KOONTZ, JR.
                                             April 17, 2003
THE HERTZ CORPORATION

            FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                     M. Langhorne Keith, Judge


     In this appeal, we consider whether a rental car company

that maintains liability insurance coverage on its rental fleet

by self-insuring under the provisions of Code § 46.2-368 is

required to provide primary liability coverage to its customer

on a motor vehicle rented in Virginia.

                           BACKGROUND

     The parties stipulated to the relevant facts.  On March 6,

2000, Daniel E. Hess (Hess), a resident of Illinois, rented an

automobile owned by The Hertz Corporation (Hertz) from Hertz's

rental office at Dulles International Airport in Loudoun County.

Hertz had qualified as a self-insurer in 1961 and remains so

under the statutory scheme presently set out in Code § 46.2-368.

Under its certificate of self-insurance, Hertz provides primary

liability insurance for the vehicles in its rental fleet while

those vehicles are under its control.  In its standard rental

agreement, Hertz offers an optional liability insurance

supplement to its customers for an additional daily charge.

Hertz's standard rental agreement specifically addresses the primary responsibility for liability arising out of the use of the rental vehicle when a customer declines to purchase the optional liability insurance supplement coverage. Preprinted language in the rental agreement states that if the customer does not purchase the liability insurance supplement (LIS), "YOUR INSURANCE AND THE INSURANCE OF THE OPERATOR OF THE CAR WILL BE PRIMARY. THIS MEANS THAT HERTZ WILL NOT GRANT ANY DEFENSE OR INDEMNITY PROTECTION UNDER THIS PARAGRAPH IF EITHER YOU OR THE OPERATOR OF THE CAR ARE COVERED UNDER ANY VALID AND COLLECTIBLE AUTOMOBILE LIABILITY INSURANCE, WHETHER PRIMARY, EXCESS OR CONTINGENT."

Hess declined to purchase Hertz's optional LIS coverage. Because Hess declined the LIS coverage, the cover page of the rental agreement included the statement that "HERTZ LIABILITY PROTECTION IS SECONDARY." A preprinted statement at the bottom of the cover page also stated that Hess "agree[d] that any insurance that provides coverage to You . . . shall be primary."

Hess was insured under an automobile insurance policy providing liability coverage issued to him in Illinois by USAA Casualty Insurance Company (USAA). The liability coverage of Hess's policy with USAA expressly applied to his "use of any auto," but included the following provision:

OTHER INSURANCE

2

> If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.

Hess's policy with USAA further provided that if the liability arose as the result of an accident outside of Illinois, the "policy will provide at least the minimum amounts and types of coverages required by law."

On March 9, 2000, while driving the Hertz rental car in Fairfax County, Hess was involved in an accident with a vehicle driven by Albert Ng (Ng). Ng was also insured under a policy with USAA. USAA subsequently paid Ng $6,200 in settlement of a claim for property damage to Ng's vehicle under his policy's collision coverage. By subrogation to Ng's rights, USAA made demand on Hertz to provide primary liability coverage to Hess and to reimburse USAA for its payment of Ng's claim. Hertz refused to reimburse USAA. Relying on the terms of its rental agreement with Hess, Hertz denied that it was obligated to provide primary liability coverage to Hess.

On December 29, 2000, USAA filed a motion for declaratory judgment in the Circuit Court of Fairfax County contending that Code § 46.2-108(D) required Hertz to provide primary liability coverage on the automobiles it rented and, thus, asked the chancellor to determine that Hertz was the primary insurer for

3

both the property damage claim already paid as well as for any potential personal injury claim Ng might have against Hess. USAA sought a further declaration that Hertz is "obligated to reimburse USAA for amounts paid in satisfaction of the collision coverage afforded the claimant Ng." Hertz filed an answer on February 5, 2001 admitting the facts alleged in USAA's pleading, but denying the legal conclusion that Code § 46.2-108(D) required it to provide primary liability insurance coverage to all automobiles it rented.

On February 13, 2002, USAA filed a motion for summary judgment along with a supporting brief. The following day, Hertz filed its own motion for summary judgment and supporting brief. Thereafter, the parties jointly submitted stipulations of fact and agreed exhibits. On February 21, 2002, Hertz filed an amended motion for summary judgment, and the chancellor heard argument from the parties on their respective motions.

In an opinion letter dated April 8, 2002, the chancellor, while recognizing that Code § 46.2-108(D) required rental car companies to rent only "insured motor vehicle[s]," opined that "nothing in § 46.2-108 or § 46.2-368 prohibits a self[-]insurer from contracting with their customers as to whose insurance will

4

provide primary coverage."[1]  The chancellor concluded that Hertz

was not required to provide primary liability coverage to Hess

because Hess had declined such coverage from Hertz in the rental

agreement.

In a final order dated April 18, 2002 and incorporating by

reference the prior opinion letter, the chancellor entered

judgment in favor of Hertz and dismissed USAA's motion for

declaratory judgment.  Noting a conflict in the judgments of

various circuit courts on the central issue of this case, we

awarded USAA an appeal.

DISCUSSION

The chancellor based his judgment upon stipulated facts

rather than upon an ore tenus hearing.  Therefore, the

chancellor's conclusions drawn from the stipulated facts,

although highly persuasive and entitled to great weight, are not

binding on appeal.  See, e.g., Johnson v. Insurance Company of

---

[1] The chancellor also addressed the alternative theory raised by USAA that Code § 38.2-2204(A), commonly referred to as the "Omnibus Clause," should be applied to a self-insurer such as Hertz and, thus, prohibit Hertz from reducing or shifting its burden of providing the minimum level of liability coverage required by that statute.  Relying on Yellow Cab Company of Virginia, Inc. v. Adinolfi, 204 Va. 815, 819, 134 S.E.2d 308, 311 (1964), the chancellor concluded that the Omnibus Clause did not apply to self-insurers.  Although USAA also assigns error to this aspect of the chancellor's judgment, as will become apparent, consideration of the application of the Omnibus Clause to self-insurers is not a factor in our resolution of this appeal.  Accordingly, we express no opinion on that issue.

*North America*, 232 Va. 340, 345, 350 S.E.2d 616, 619 (1986). However, we will not reverse the chancellor's judgment on appeal unless it is plainly wrong or without evidence to support it. See, e.g., *State Farm Mutual Automobile Insurance Co. v. Weisman*, 247 Va. 199, 202, 441 S.E.2d 16, 18 (1994). See also Code § 8.01-680.

We begin our analysis in this case with a review of the statutory scheme applicable to self-insurers of motor vehicles under the provisions of Code § 46.2-368 and related Code sections. There is no dispute that Hertz is engaged in the business of renting motor vehicles and that it has been issued a certificate of self-insurance pursuant to, and in full compliance with, the provisions of Code § 46.2-368(B). Code § 46.2-108(D) provides that "[n]o person engaged in the business of renting automobiles and trucks without drivers shall rent any vehicle without a driver unless the vehicle is an insured motor vehicle as defined in § 46.2-705. A violation of this subsection shall constitute a Class I misdemeanor." Code § 46.2-705, in relevant part, defines an "[i]nsured motor vehicle" as "a motor vehicle as to which there is bodily injury liability insurance and property damage liability insurance, both in the amounts specified in § 46.2-472 . . . or as to which the owner has qualified as a self-insurer in accordance with the provisions of § 46.2-368."

6

Code § 46.2-368(B) requires a self-insurer to provide the permissive users of its motor vehicles uninsured or underinsured motorist protection "to the extent required by Code § 38.2-2206." However, the subsection limits that protection to the financial requirements of Code § 46.2-472 (single accident limits of $25,000 for bodily injury or death of one person, $50,000 for bodily injury or death of two or more persons, and $20,000 for property damage) and specifically provides that this protection "shall be secondary coverage" to any other available insurance coverage. Code § 46.2-368(C) creates an exception to the liability of a self-insurer "where the permissive user has prejudicially failed to cooperate in the defense of the claim which resulted in the judgment" and the self-insurer has provided notice of its intent to rely on this exception.

USAA contends that when Code §§ 46.2-368, 46.2-705, and 46.2-108 are construed together, as they must be given the internal cross-references found within them, it is clear that the legislature intended a self-insuring rental car company, such as Hertz, to provide primary liability coverage on vehicles owned by it at all times, including when a vehicle is under the control of a customer and even if the customer has declined to

pay additionally for such coverage.[2]  Stated another way, USAA contends that a customer is a permissive user of a vehicle owned by the self-insured rental car company and, thus, entitled to coverage under the rental company's certificate of self-insurance pursuant to Code § 46.2-368(C).  USAA maintains that it would be against public policy to permit a rental car company in its rental agreement to disclaim or shift the requirement of providing primary liability coverage to "any insurance" the customer carries.  In support of this assertion, USAA notes that Code § 46.2-368(B) expressly provides that uninsured or underinsured coverage provided by a certificate of self-insurance "shall be secondary coverage to any other valid and collectible insurance providing the same protection which is available" to a permissive user, but this statute, nor any

---

[2] USAA further contends that a rental car company that is not self-insured, but has obtained the insurance required under Code § 46.2-108(D) through a policy from a licensed insurance provider, would necessarily be required to have that coverage extend to its customers because "[t]he Omnibus Clause, . . . Code § 38.2-2204, would clearly apply and any provision either in the policy or in the rental agreement purporting to seek to limit the Omnibus coverage would be void."  Thus, USAA contends it would be inconsistent for the legislature to permit self-insurers to receive "superior treatment."  While we agree with USAA that Code § 46.2-108(D) makes no distinction between rental car companies that insure under a commercial policy and those that self-insure, the facts of the case under consideration are limited to the application of that law with respect to Hertz, a self-insurer.  Accordingly, our discussion is limited in its application to that circumstance.

other, contains no similarly express provision for liability coverage.

Hertz first responds that USAA applies too broad a reading to Code § 46.2-368(C), contending that "permissive users" could be read to mean the employees and agents of the self-insurer using its vehicles in the course of their employment or agency. Hertz further asserts that even if customers are permissive users entitled to coverage, the provisions of its rental agreement that permit a customer to decline its liability insurance supplement coverage are in keeping with the requirements of Code § 46.2-108 and public policy. This is so, Hertz contends, because even when the customer declines such coverage, the vehicle remains insured by Hertz, while primary coverage rests with any insurance carried by the customer. Continuing, Hertz contends that if there is no other coverage available to the customer, Hertz would still provide coverage in the event of a claim being made and, thus, the vehicle is not uninsured. We disagree with Hertz.

When read in pari materia, Code §§ 46.2-108, 46.2-368, and 46.2-705, evince a clear legislative intent that a company renting a motor vehicle without a driver in Virginia must assure that the vehicle has the statutory minimum liability insurance coverage. Such intent is in keeping with the long-standing public policy to assure that motor vehicles driven on the

highways of Virginia are subject to a minimum level of primary liability insurance in order to provide for the protection and compensation of innocent parties injured in motor vehicle accidents.  And, we will construe the statutory language at issue here liberally to accomplish the intended purpose of the statutes.  See, e.g., Virginia Farm Bureau Mutual Insurance Co. v. Gile, 259 Va. 164, 168, 524 S.E.2d 642, 644 (2000); Tudor v. Allstate Insurance Co., 216 Va. 918, 921, 224 S.E.2d 156, 158 (1976); Rose v. Travelers Indemnity Co., 209 Va. 755, 758, 167 S.E.2d 339, 342 (1969).

It is then clear that Hertz, a self-insurer engaged "in the business of renting automobiles and trucks without drivers," may not lawfully rent one of its vehicles unless that vehicle is insured with the statutorily mandated amount of primary bodily injury and property damage liability coverage.  Moreover, it is equally clear that no portion of the statutory scheme related to the insurance requirements for a self-insuring rental car company permits such a company by contract with its customer to avoid its obligation to assure primary liability coverage by purporting to alter or expand the insurance coverage provided by the customer's own carrier.

Here, Hertz's contract with Hess improperly attempted to expand the coverage that USAA had agreed by contract to provide to Hess.  Hess's contract with USAA, which was not issued or

delivered in Virginia, restricted its liability coverage for Hess's operation of a non-owned vehicle by stating that such coverage shall be "excess over any other collectible insurance." The parties do not contest the validity of this insurance contract provision.[3]

Manifestly, because USAA was not a party to Hertz's contract with Hess, Hertz could not expand USAA's obligations to Hess under that separate contract by attempting to require USAA to provide primary liability coverage for Hess's use of Hertz's rental vehicle. Thus, because Hess's policy with USAA provides only excess coverage, the motor vehicle Hertz rented to Hess remained an insured vehicle as required by Code § 46.2-108(D) only if primary coverage was afforded by Hertz through its certificate of self-insurance.

For these reasons, we hold that Hertz is required to provide Hess with primary bodily injury and property damage liability insurance coverage in the amounts specified in Code § 46.2-472, and that this obligation could not be delegated to USAA through Hertz's rental agreement with him. Thus, we

---

[3] USAA's policy was not issued or delivered in Virginia within the meaning of Virginia's Omnibus Clause, Code § 38.2-2204. Therefore, the enforceability under this Code section of the USAA policy provision, that its liability coverage would be excess when its insured was driving a non-owned motor vehicle, is not an issue in this case.

11

conclude that the chancellor erred in granting summary judgment for Hertz and dismissing USAA's motion for declaratory judgment.

Our determination that Hertz is the primary liability insurer for any suit or judgment against Hess arising out of Hess's operation of Hertz's rental vehicle does not end our analysis of this case. USAA also sought a declaration that Hertz is "obligated to reimburse USAA for any amounts paid in satisfaction of the collision coverage afforded claimant Ng." The parties stipulated that amount was $6,200. However, at the time of the proceedings before the chancellor, Ng had not filed suit against Hess to recover his asserted damages, Hess's liability for such had not been admitted or established, and there is no evidence or stipulation that either Hess or Hertz was given prior notice of USAA's payment to Ng. In addition, we are not able to determine from the record whether Hess and Hertz may be able to assert either factual or legal defenses that would bar any reimbursement to USAA. Under these circumstances, our judgment in favor of USAA must be limited to a declaration that Hertz is required to provide primary liability coverage and a defense to Hess in the event that Ng makes a claim against him for bodily injury. USAA's claim for reimbursement will be left to resolution in a separate proceeding if that becomes necessary.

CONCLUSION

For these reasons, we will reverse the judgment of the chancellor awarding summary judgment to Hertz and dismissing USAA's motion for declaratory judgment. We will enter final judgment for USAA declaring that Hertz is required to provide primary liability coverage and a defense to Hess for any bodily injury claim arising out of his operation of Hertz's rental car that may be asserted by Ng.

<u>Reversed</u>.

JUSTICE LACY, with whom JUSTICE KINSER and JUSTICE LEMONS join, dissenting.

I agree with the majority's holding that, while a vehicle rented by Hertz must have liability coverage equal to the statutorily prescribed limits, that coverage need not always be provided by Hertz. However, I disagree with the majority's conclusion that Hertz, through its self-insurance certificate, must provide primary coverage in this case because the "excess insurance" language of the USAA policy precludes application of that policy as primary coverage.

The USAA policy contains the following provision:

If there is other applicable liability insurance we will pay only our share of the loss. . . . However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.

13

Under the plain language of this provision, if there is no other collectible insurance, the coverage provided by the USAA policy for non-owned vehicles is not restricted to excess coverage.  To determine what constitutes "collectible insurance," we apply Illinois law, the law of the jurisdiction in which the contract was made.  Woodson v. Celina Mut. Ins. Co., 211 Va. 423, 426, 177 S.E.2d 610, 613 (1970).  Under Illinois law, self-insurance is not "insurance" for purposes of assigning liability between commercial insurance providers and self-insurers.  Chicago Hosp. Risk Pooling Program v. Illinois State Med. Inter-Insurance Exch., 758 N.E.2d 353, 362 (Ill. App. 2001); USX Corp. v. Liberty Mut. Ins. Co., 645 N.E.2d 396, 403 (Ill. App. 1994); Aetna Cas. & Sur. Co. of Illinois v. James J. Benes & Assocs., 593 N.E.2d 1087, 1090 (Ill. App.), appeal denied, 602 N.E.2d 445 (1992).[*]  Therefore, the coverage available in this case, self-insurance, is not insurance for purposes of invoking the excess coverage restriction in the USAA

---

[*] I note that while this precise issue has not been considered in Virginia, it is consistent with our cases that have preserved the distinction between policies of insurance and self-insurance.  See e.g. Yellow Cab Co. of Virginia v. Adinolfi, 204 Va. 815, 134 S.E.2d 308 (1964).

14

policy.  Consequently, USAA's liability insurance is available as the primary coverage.

This conclusion necessarily implicates the argument made by USAA that the rental contract conflicts with Code § 38.2-2204, the omnibus clause, because subsection D of that statute prohibits a policy of insurance from containing any provision that "purports or seeks to limit or reduce the coverage" required by that section, and provisions in liability insurance policies covering motor vehicles that render coverage under such policy secondary or excess violate subsection D of Code § 38.2-2204.  Continental Ins. Co. v. State Farm Fire and Cas. Co., 238 Va. 209, 211-12, 380 S.E.2d 661, 663 (1989).  However, as Hertz argues, Code § 38.2-2204, by its terms, applies only to contracts or policies of insurance; it does not apply to coverage provided through self-insurance.  The statute is not ambiguous in this regard and does not require interpretation. Regardless of whether we believe the public policy unwise or inequitable, imposing different requirements on policies of insurance and self-insurance is a matter for consideration by the legislative branch.  See Yellow Cab Co. of Virginia v. Adinolfi, 204 Va. 815, 134 S.E.2d 308 (1964).

Based on this analysis, I conclude that the trial court was correct and that the USAA contract of insurance is primary in

this case.  Therefore, I respectfully dissent from the holding of the majority.