PRESENT: Hassell, C.J., Lacy, Keenan, Kinser, Lemons, and Agee, JJ., and Stephenson, S.J.

FREDERICK COUNTY SCHOOL BOARD

v.  Record No. 022984

OPINION BY
JUSTICE G. STEVEN AGEE
January 16, 2004

JOHN HARRIS HANNAH, JR., ETC., ET AL.

FROM THE CIRCUIT COURT OF FREDERICK COUNTY
Jay T. Swett, Judge Pro Tempore

I.

The dispositive issue in this appeal is whether the trial court erred in denying a school board's motion to reduce the plaintiffs' ad damnum clause to $50,000, the limit on liability the school board alleged was set by Code § 22.1-194. For the reasons that follow, we will affirm the judgment of the trial court.

II.

John Harris Hannah, Jr. ("Hannah"), a minor who sues by his mother and next friend, Barbara Foster, now Barbara Ruffner ("Ruffner"), and Ruffner, individually (collectively, "the Plaintiffs"), instituted an action against the Frederick County School Board ("the School Board"), seeking damages for personal injuries and other loss sustained by Hannah and Ruffner as a result of a school bus accident. The School Board admitted its negligence caused the accident, but contended damages were limited to $50,000 by Code § 22.1-194. Alternatively, the

School Board asserted the Plaintiffs' right to recover was barred by the doctrine of sovereign immunity if the $50,000 limit did not apply.

The School Board is a member of the Virginia School Board Association ("VSBA") which operates a self-insurance pool (the "Pool"), as authorized by Code § 15.2-2703. The School Board is a member of the Pool, which provides various lines of self-insurance to the School Board, including liability coverage of up to $1,000,000 for motor vehicle accidents.

The School Board filed a motion to reduce the Plaintiffs' ad damnum clause to $50,000, arguing Code § 22.1-194 limited its liability in this case to $50,000 because the School Board met the self-insurance qualification of Code § 22.1-190(D). Even though the School Board admitted it had never obtained the certificate of self-insurance from the Commissioner of the Department of Motor Vehicles required by Code § 22.1-190(D), it contended members of the Pool were exempt from that requirement by Code § 15.2-2704.

The trial court disagreed and found the specific statutory provision of Code § 22.1-190(D) controlling. The trial court ruled that a certificate of self-insurance from the Commissioner of the Department of Motor Vehicles is required when the liability limit of Code § 22.1-194 is to be claimed by reference to Code § 22.1-190. The trial court therefore denied the motion

2

to reduce the ad damnum and awarded Hannah damages of $74,500 and Ruffner damages of $4,510.  We awarded the School Board this appeal.

A.

The resolution of the issues on appeal depends on the statutory interpretation of three different Code sections which state in pertinent part:

> A. Every vehicle shall be covered in a policy of liability and property damage insurance issued by an insurance carrier authorized to transact business in this Commonwealth, in the amounts of at least $50,000 for injury, including death, to 1 person, $200,000 for injury, including death, to all persons injured in any 1 accident, and $10,000 for damage, including destruction, to the property of any person, other than the insured . . . .
>
> . . . .
>
> D. This insurance shall not be required in cases where pupils are transported in vehicles which are owned or operated by a . . . school board which has qualified for and received a certificate of self-insurance from the Commissioner of the Department of Motor Vehicles, following a certification of financial responsibility equal to that required under subsection A of this section.

Code § 22.1-190(A) and (D) (emphasis added).

> In case the locality or the school board is the owner, or operator through medium of a driver, of, or otherwise is the insured under the policy upon, a vehicle involved in an accident, the locality or school board shall be subject to action up to, but not beyond, the limits of valid and collectible insurance in force to cover the injury complained of or, in cases set forth in

3

> subsection D of § 22.1-190, up to but not beyond the amounts of insurance required under subsection A of § 22.1-190 and the defense of governmental immunity shall not be a bar to action or recovery.

Code § 22.1-194 (emphasis added).

> A group self-insurance pool shall be deemed a self-insurer for motor vehicle security under § 46.2-368. Members of the pool participating in the motor vehicle self-insurance provided by the pool shall be deemed to meet the requirements of security as required and an application for a certificate of self-insurance under § 46.2-368 shall not be required.

Code § 15.2-2704 (emphasis added).

Pursuant to Code § 22.1-194, a school board is subject to a limited waiver of sovereign immunity when its vehicle is "involved in an accident." Immunity is waived either to "the limits of valid and collectible insurance in force to cover the injury" or the coverage set by Code § 22.1-190(A) when the certificate of self-insurance under Code § 22.1-190(D) has been obtained.

The School Board argues that it is entitled to the liability limit derived from Code § 22.1-190(A), $50,000 in this case, although it has not obtained the certificate of self-insurance required by Code § 22.1-190(D). The School Board avers that, as a member of the Pool, Code § 15.2-2704 exempts it from the self-insurance certificate requirement of Code § 22.1-

4

190(D), and thus, that it qualifies for the Code § 22.1-190(A) limitation level.

The question to be answered is whether the School Board, without meeting the requirements of Code § 22.1-190(D), may nonetheless qualify for the limited liability by virtue of Code § 15.2-2704. Application of accepted rules of statutory construction answer that inquiry in the negative.

### B.

"[W]hen one statute speaks to a subject in a general way and another deals with a part of the same subject in a more specific manner, the two should be harmonized, if possible, and where they conflict, the latter prevails." Virginia Nat'l Bank v. Harris, 220 Va. 336, 340, 257 S.E.2d 867, 870 (1979); accord County of Fairfax v. Century Concrete Servs., 254 Va. 423, 427, 492 S.E.2d 648, 650 (1997); Dodson v. Potomac Mack Sales & Service, 241 Va. 89, 94-95, 400 S.E.2d 178, 181 (1991).

Code § 15.2-2703 authorizes a variety of designated political subdivisions[1] to join self-insurance pools while Code § 15.2-2704 establishes the powers of those pools. Code § 15.2-

---

[1] Political subdivision, for purposes of Code § 15.2-2703, "means any county, city, or town, school board, Transportation District Commission, or any other local governmental authority or local agency or public service corporation owned, operated or controlled by a locality or local government authority, with power to enter into contractual undertakings." Code § 15.2-2701.

5

2704 exempts all covered political subdivisions in such self-insurance pools from obtaining a certificate of self-insurance under Code § 46.2-368.[2]  Neither the self-insurance pool statutes nor Code § 46.2-368 reference the self-insurance certificate requirement set out in Code § 22.1-190(D).

By contrast, Code § 22.1-190 sets forth insurance requirements, specific only to school boards, that must be met with respect to vehicles used in the transportation of students. One of these requirements is that a school board obtain a certificate of self-insurance from the Department of Motor Vehicles, set out in Code § 22.1-190(D), in order to benefit from the lower statutory liability limits available in Code § 22.1-194.

Other noteworthy evidence exists demonstrating the General Assembly's intent to differentiate between the use of insurance pools by political subdivisions generally and by school boards specifically.  For example, Code § 15.2-2704, the more general statute, exempts the Pool from providing uninsured motorist coverage otherwise mandated by Code § 38.2-2206.  In comparison,

---

[2] A certificate of self-insurance under Code § 46.2-368 refers to Chapter 3 of Title 46.2, but does not address the particular requirements of insurance coverage for specific categories or functions of political subdivisions.  By contrast, Code § 22.1-190 and Code § 22.1-194 are located in Chapter 12, Article 2 of Title 22.1, which deals specifically with insurance provisions for pupil transportation.

Code § 22.1-190(A), the specific statute, sets a minimum required liability coverage of $50,000 for school boards and mandates that "the policy of insurance shall provide coverage for loss or damage caused by an uninsured motorist . . . ."

The School Board argues that Code § 15.2-2704 and Code § 22.1-190(D) "can be reasonably construed to give full force and effect to each." The School Board does so by reading the exemption for a certificate of self-insurance in Code § 15.2-2704 as an implied exemption to the Code § 22.1-190(D) certificate requirement. It is incongruous for the School Board to rely on Code § 15.2-2704, the statute of general application, to waive the certification requirement but then claim that Code § 22.1-190, the statute of specific application, establishes the ad damnum limitation of $50,000. As noted above, the School Board's reasoning creates a conundrum in the case of uninsured motorist coverage.

The School Board's proposed reading ignores the General Assembly's expressed intent to regulate the insurance requirements for motor vehicles used to transport students by a specific statutory framework as opposed to the general requirements of the Pool for all other permitted political subdivisions. The more specific statutory provisions must prevail. The General Assembly has specifically required school

7

boards to meet different requirements regarding motor vehicle insurance than other political subdivisions. Among those requirements is obtaining a certificate of self-insurance where the liability limit of Code § 22.1-194 is to be claimed by reference to Code § 22.1-190.

Construing the statutes in this manner "harmonize[s] Code § 22.1-190(D) and Code § 15.2-2704 so as to give full force and effect to both" without undermining the important governmental purpose and benefit that self-insurance pools provide. Such a construction has no effect on any political subdivision, other than school boards, which is the evident intent of the General Assembly through its more specific statutes in Title 22.1. School boards who wish to join self-insurance pools and take advantage of the liability limit under Code § 22.1-194, as in this case, need only apply for a certificate of self-insurance from the Commissioner of the Department of Motor Vehicles as mandated by the plain language of the statute.

C.

The School Board alternatively argues that if it is not entitled to the $50,000 statutory liability cap, the Plaintiffs' claims are barred by the doctrine of sovereign immunity.

Initially, the School Board argues the reference to "the policy" in the first sentence of Code § 22.1-194 means only a policy as set out in Code § 22.1-190(A) which must be "issued by

8

an insurance carrier authorized to transact business in this Commonwealth." In reliance upon Code § 15.2-2709, which provides group self-insurance pools are not an insurance company or an insurer, the School Board then reasons the Code § 22.1-194 provision for "valid and collectible insurance in force" must come only from "the policy". In other words, since the Pool's self-insurance is not insurance in the form of "the policy", then Pool funds cannot be "valid and collectible insurance."

The School Board, however, reads only part of the first sentence in Code § 22.1-194. The plain reading of the statute reflects that a school board is "subject to action up to . . . the limits of valid and collectible insurance in force" in two circumstances. The first instance is where "the school board is the owner . . . of . . . a vehicle involved in an accident . . . ." The second instance is where the school board "otherwise is the insured under the policy upon[] a vehicle involved in an accident . . . ." (emphasis added).

By writing the statute in the disjunctive, the General Assembly has clearly provided that the School Board, solely by virtue of its ownership of "a vehicle involved in an accident" is liable up to "the limits of valid and collectible insurance." While a school board may also be liable when it "otherwise is the insured under the policy," that circumstance is not a

9

condition precedent for the School Board's liability when it owns "a vehicle involved in an accident."

It is uncontested that the School Board owned the vehicles involved in the accident in this case. By the plain language of the statute, that is sufficient to subject the School Board to liability up to "the limits of valid and collectible insurance." While not the proceeds of an insurance "policy," in the strictest sense of that term, the insurance protection provided by the Pool is nonetheless "valid and collectible insurance in force to cover the injury complained of." See generally USAA Casualty Insurance v. The Hertz Corp. 265 Va. 450, 578 S.E.2d 775 (2003).

Finally, the School Board argues that since it did not satisfy the requirements of Code § 22.1-190(D), it cannot be required to pay the judgment because Code § 22.1-194 prohibits using school funds to satisfy motor vehicle claims "except where approved self-insurance has been provided pursuant to § 22.1-190 D." Requiring the School Board, via Pool payment, to pay the appellees' judgment does not violate Code § 22.1-194's prohibition against using school funds to satisfy motor vehicle claims. Payments from the assets of the Pool are no longer "school funds," but are Pool funds. To hold otherwise would be tantamount to holding that a school board's insurance premiums paid to an insurance company constitute "school funds," for

10

purposes of Code § 22.1-194, when the insurance company pays a motor vehicle claim.

### III.

For the reasons set forth above, the School Board is not entitled to the $50,000 liability limit of Code § 22.1-190(A) as derived through Code § 22.1-194 because it failed to obtain a certificate of self-insurance from the Department of Motor Vehicles as required by Code § 22.1-190(D).  Code § 22.1-194 abrogated the School Board's sovereign immunity up to the limits of its coverage through the Pool, which is sufficient to satisfy the Plaintiff's award in this case.  Accordingly, the judgment of the trial court will be affirmed.

Affirmed.

SENIOR JUSTICE STEPHENSON, with whom JUSTICE LACY and JUSTICE KEENAN join, dissenting.

I respectfully dissent.  It is well established that, when two statutes are in apparent conflict, a court, if reasonably possible, must give them such a construction as will give force and effect to both.  Commonwealth v. Zamani, 256 Va. 391, 395, 507 S.E.2d 608, 609 (1998); Board of Supervisors v. Marshall, 215 Va. 756, 761, 214 S.E.2d 146, 150 (1975).

In the present case, it is reasonably possible to construe and harmonize Code § 22.1-190(D) and Code § 15.2-2704 so as to

11

give full force and effect to both.  Code § 22.1-190(D) reasonably can be read to govern school boards that are individually self-insured for school bus accidents, requiring such school boards to apply for and receive a certificate of self-insurance.  However, when a school board is not individually self-insured but is a member of a self-insurance pool, Code § 15.2-2704 provides that it "shall be deemed to meet the requirements of security as required and an application for a certificate of self-insurance . . . shall not be required." (Emphasis added.)  Therefore, the School Board qualified for the limit on liability despite its lack of a certificate of self-insurance.

In reaching this conclusion, I have given weight to the intent of the General Assembly in approving self-insurance pools for political subdivisions such as school boards.  That intent is expressed in Code § 15.2-2700 as follows:

> The General Assembly hereby finds and determines that insurance protection is essential to the proper functioning of political subdivisions; that the resources of political subdivisions are burdened by the high cost of and frequent inability to secure such protection through standard carriers; that proper risk management requires the spreading of risk so as to minimize fluctuation in insurance needs; and that, therefore, all contributions of financial and administrative resources made by a political subdivision pursuant to an intergovernmental contract as authorized by this chapter are made for a public and governmental purpose, and that such contributions benefit each contributing political subdivision.

12

The trial court's ruling and the holding of the majority in the present case undermine the important governmental purpose and benefit that self-insurance pools provide.  School boards, without the $50,000 limit on liability, would be reluctant to become members of and reap the benefit from a self-insurance pool.

I would hold, therefore, that the trial court erred in denying the School Board's motion to reduce the Plaintiffs' ad damnum to $50,000 and in awarding damages in excess of the $50,000 limit.  Accordingly, I would reverse the trial court's judgment and remand the case for a redetermination of damages.